Carthel VANN, Appellant,

v.

TOWN TOPIC, INC., Respondent.

No. WD 41691.

Missouri Court of Appeals,
Western District.

Oct. 17, 1989.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Nov. 28, 1989.

Charles L. House and James P. Cannon, Kansas City, for appellant.

Joseph B. Bott, Kansas City, for respondent.

Before CLARK, P.J., and LOWENSTEIN and BERREY, JJ.

CLARK, Presiding Judge.

Appellant sued respondent to recover damages for personal injuries appellant received when he was attacked by persons outside respondent's place of business. Respondent moved for summary judgment relying on depositions of various witnesses and contending that under the undisputed, material facts, respondent was entitled to judgment as a matter of law. The trial court agreed, entered summary judgment for respondent and appellant has appealed.

Three points of error are asserted, but the only contention warranting review is appellant's claim that the trial court erroneously found respondent to owe no duty to protect patrons from injury from third parties who had manifested a disposition toward violence and who perpetrated an attack on appellant outside respondent's premises.

Appellant does contend that summary judgment was inappropriate because some material facts were in dispute. Where summary judgment has been entered, the court must view the record in the light most favorable to the party against whom the judgment was entered. *Zafft v. Eli Lilly & Co.*, 676 S.W.2d 241, 244 (Mo. banc 1984); *Scott v. Thornton*, 484 S.W.2d 312, 314 (Mo.1972). Thus, appellant enjoys the benefit of all facts which would tend to support his claim. If those facts indicate that he cannot recover under any theory within the scope of the pleadings, his cause is not rescued from summary judgment merely because the facts on which his claim depends are themselves in dispute.

We therefore recount the facts giving to appellant the benefit of that version of events which corresponds with the petition allegations and which tends to buttress his claim of respondent's liability to a business invitee. The fact that other evidence may place the claim in a less favorable posture is irrelevant.

In the early morning hours of May 4, 1986, appellant and a companion, Joseph Raya, visited respondent's restaurant and ordered food. While they were eating, one Perez entered to claim an order of food requested to take with him. Several other persons, apparently known to Perez entered, an argument ensued and resulted in some scuffling and shoving. Some or all of the persons appeared to be intoxicated. One of respondent's waitresses remonstrated with the group about the disturbance and those involved, including Perez, left to continue their dispute outside.

Appellant and Raya were not involved in the confrontation between Perez and the others inside the restaurant and those persons were not known to appellant and Raya. After the other group had left at the waitress's direction, appellant and Raya completed their meals. They then ordered some food, apparently sandwiches, to be prepared and taken with them. When that order was ready, appellant and Raya left by the front door of the restaurant intending to go to Raya's car which was parked in the lot adjacent to the restaurant and provided for respondent's customers. To reach the lot, it was necessary to walk along a public sidewalk in front of the building. As appellant and Raya stepped out on the sidewalk, they saw that the altercation among Perez and the others was still in progress and that Perez was down in the street.

Upon seeing what was occurring, Raya suggested to appellant that they should attempt to stop the fight. Appellant agreed and "hollered" at the group saying, "Hey, break it up." At this point those involved in the disturbance, other than Perez, turned toward Raya and appellant, al-

lowing Perez to escape. Appellant and Raya first sought to defend themselves but then retreated toward the parking lot. The pair became separated and at least one of the men attacked appellant with a knife inflicting a number of wounds.

While the attack on appellant was still in progress, appellant being down on the surface of the parking lot, the police arrived, evidently summoned by a waitress at respondent's restaurant. Appellant was rescued from further injury and the assailants were arrested.

Appellant's petition for damages was grounded upon the theory that a business owner owes a duty of care to customer-invitees to protect them from criminal attack by third persons where the business owner knows or should know that criminal acts are occurring or are about to occur. Under the facts of this case, appellant alleged that respondent breached a duty, either to warn appellant of the danger to him from the combatants outside in the street, or to come to his aid once the need for such aid was apparent. Specifically, appellant charged that respondent's negligence lay in the failure of the waitress to call for police assistance earlier than she did.

■ We initially reject any prospect that appellant's case could be based on a failure of respondent to warn appellant of danger in consequence of the fight proceeding in the street outside the restaurant. Appellant was a witness to the scuffle among the persons earlier, there was a plain view of the street from the front window of the premises and appellant was well aware of what was occurring once he stepped onto the sidewalk from the exit door. A warning would have told appellant nothing he did not already know and would have therefore been meaningless. Appellant merely encountered circumstances which were known to him and obvious. No facts are alleged upon which appellant could have made a submissible case for failure to warn.

The argument appellant advances here abandons any possible cause for failure to warn and instead focuses on the claim that respondent owed him a duty to provide protection against possible assault while appellant was on his way to the vehicle in respondent's parking lot. The most serious defect in this aspect of the case lies in the absence of a nexus between the alleged negligence of respondent and the resulting injury to appellant.

■ Actionable negligence requires a causal connection between the conduct of defendant and the resulting injury to the plaintiff. *Zafft v. Eli Lilly & Co.*, 676 S.W.2d at 244. Proximate cause is such cause as operates to produce a particular consequence without the intervention of an independent cause, in the absence of which the injuries would not have been inflicted. *Owens v. Union Electric Co.*, 729 S.W.2d 248, 250 (Mo.App.1987). An intervening resulting cause is a new and independent force which so interrupts the chain of events initiated by defendant's negligence as to become the responsible, direct, proximate cause of the injury. *Sirna v. APC Building Corp.*, 730 S.W.2d 561, 564 (Mo. App.1987).

The facts of this case reviewed above show that the group engaged in the altercation with Perez had no interest in appellant and posed no threat to his well-being while all were inside the restaurant. Once the combatants had left the restaurant, they were no longer on respondent's premises, the evidence being that the fight was out in the street. There was no allegation by appellant that the way to Raya's car or to the parking lot was impeded because of the fight or that the conduct of the participants posed any threat to appellant. The sole and precipitating cause of the attack on appellant was his decision to intervene in the melee, albeit with the laudable objective of preventing injury to Perez.

■ The facts lead inescapably to the conclusion that had appellant proceeded directly to the Raya automobile, the events would have passed without incident to appellant. Even if it be assumed that respondent owed some duty to protect appellant as he left the restaurant, a failure to discharge that duty was not the proximate cause of appellant's injury. The interven-

ing resulting cause was the act of appellant when he injected himself into the fray by attempting to stop the attack on Perez. Appellant therefore makes no case against respondent because the negligence of its employees did not cause the injuries complained of.

We are cognizable of the decision in *Cox v. J.C. Penney Co.*, 741 S.W.2d 28 (Mo. banc 1987), which applies the doctrine of comparative fault in premises liability cases. Under *Cox*, a business invitee need not be without fault to obtain a proportionate recovery in damages. This rule, however, does not abrogate the basic tort law of negligence. In order to recover damages, the invitee-plaintiff must still prove a causal relationship in some degree between his injury and the defendant's negligence. Where, as here, the facts show a separate intervening cause which produced the injury, the stage of apportioning fault is not reached.

The foregoing discussion has assumed the prospect of liability on the part of respondent if the fact had been that an unprovoked attack were made on appellant as he and Raya left the restaurant. Even in that circumstance, however, appellant would have had no claim to relief.

There was some understandable lack of specificity in the accounts of witnesses as to where the fight between Perez and his assailants occurred. At least when appellant left the restaurant, it was agreed that Perez was down in the street and from this it may be assumed his attackers were also in the street. Whether appellant was ever in the street is in doubt but at least it may be stated with certainty that the group came after appellant when he was either in the street or on the sidewalk, both being public areas adjacent to respondent's business premises. There is no allegation nor basis to find that respondent had any control over these public areas. Subsequently, appellant fled to the respondent's parking lot, but by then, the assault was already in progress.

In *Wofford v. Kennedy's 2nd Street Co.*, 649 S.W.2d 912, 914 (Mo.App.1983), the court cited *Mitchell v. Archibald & Kendall, Inc.*, 573 F.2d 429 (7th Cir.1978), and accepted the proposition that where a defendant has no control over the public street, it also owes no duty to business invitees to prevent injuries being inflicted by third persons when the invitees are on the public streets. In *Mitchell*, the plaintiff was parked on the street next to defendant's place of business where he had been directed by defendant's employees. The plaintiff in *Wofford* was abducted when she was on her way to her car which was parked on the street around the corner from defendant's business, there being no parking lots or garages in the area to serve defendant's customers.

 There are exceptions to the general rule involving the duty of an owner of business premises to protect customers against a deliberate criminal attack by a third person. For example, where a person entrusts himself to the protection of another and relies on that person to provide a place of safety, a special relationship arises creating a duty to exercise care for the safety of the invitee while on the premises. *Virginia D. v. Madesco Inv. Corp.*, 648 S.W.2d 881 (Mo. banc 1983). Other cases involve special facts where frequent violent crimes have occurred recently on the same premises or in very close proximity. *Meadows v. Friedman Railroad Salvage Warehouse*, 655 S.W.2d 718, 721 (Mo.App.1983). In this latter instance, the prior crimes must have been sufficiently numerous and recent to put the defendant on notice that there is a likelihood third persons will endanger the safety of defendant's business invitees. *Faheen by Hebron v. City Parking Corp.*, 734 S.W.2d 270, 273–74 (Mo. App.1987).

 None of the exceptions applies in this case. There was no indication that appellant was in any danger while he was in respondent's restaurant and no allegation that any other crimes of violence had occurred in the past on respondent's premises, in the parking lot or nearby. Such shoving and scuffling as did occur between Perez and the others in the restaurant is not claimed to have forecast any criminal acts of violence so as to have put anyone

on notice that appellant or any other of respondent's customers was in danger. Indeed, if such had been the case, appellant had access to the same warning as did respondent's employees. The events which later occurred outside, even if not precipitated by appellant's own conduct, were not contended to have been other than an isolated and unforeseeable event. There was no duty on respondent's part to guard appellant's safety under these facts. Absent that duty, there could be no liability and no cause of action against respondent.

The judgment is affirmed.

BERREY, J. concurs.

LOWENSTEIN, J. dissents in separate opinion filed.

LOWENSTEIN, Judge, dissenting.

I dissent in this premises liability case concerning an owner's duty to protect business invitees from the known criminal acts of a third party.

Disposition of this appeal should turn on several questions: (1) is there a genuine issue of fact as to whether Vann was a business invitee at the time of his injury; and, (2) if so, is there a genuine issue of fact as to whether Town Topic exercised or breached the duty of care to protect his well-being; and, (3) did Vann's voluntary entry into the fight as a rescuer preclude any recovery against the owner of the premises?

A business invitee is one who goes to a business either at the express or implied invitation of the owner or occupant in connection with the business which is being carried on at that location. *Behnke v. City of Moberly*, 243 S.W.2d 549, 553 (Mo.App. 1951). There can be no legal dispute that when Vann was inside the Town Topic building as a patron he was a business invitee. The problem here is if or when his status changed. If his status as such had not ended before the altercation, Town Topic owed him some duty of care. Under the Restatement (Second) of Torts § 344, the possessor who opens land to the public for his business purposes must exercise reasonable care toward invitees. However, if

Vann's status as business invitee had ended before the stabbing, Town Topic would owe him no duty of care, or perhaps a more relaxed duty if he were licensee or trespasser.

The status as business invitee does not begin when the door opens to the establishment on the way in and end when the door closes on the way out. The duty to protect, and therefore the status of, a business invitee extends not only to the premises but also its approaches. *Wofford v. Kennedy's 2nd Street Co.*, 649 S.W.2d 912, 914 (Mo. App.1983); *Associated Dry Goods Corporation v. Drake*, 394 F.2d 637, 641 (8th Cir.1968).

Reviewed in a light most favorable to Vann, there is a genuine issue as to his status as business invitee. At deposition, Vann testified that when he and Raya stepped out of the Town Topic building, they observed a fight in progress. This fight was occuring "kind of like on the sidewalk and on the street ... [r]ight in front of the building." Using this testimony in conjunction with Exhibit A, a photograph of Town Topic and the surrounding area, one would be hardpressed to believe Vann could be standing any *further* than a few feet from the Town Topic building. At this point, Vann "hollered at them and said, hey, break it up," at which time the attackers "turned on" him and Raya. At no juncture in his testimony did Vann definitely place himself in a position where it could be said his status changed from that of an invitee. There is also the deposition of Shirley Miller, the waitress on duty. She states that when the original fight started in the Town Topic, she "told them to take it outside." She could see through the windows that the fight was continuing outside, so she "went outside and hollered at them to break it up." Miller testified that while she was outside, Vann and Raya came out and stood behind her on the sidewalk, at which time "[t]hey (Vann and Raya) was [sic] just standing there for a few minutes." She then went back inside behind the counter. When Miller went inside and left Vann and Raya outside, they were on the sidewalk in front of Town Topic. In

sum, Vann's status as a business invitee depends on his physical location at the moment in question. Since there was testimony supporting the proposition that Vann was on the sidewalk, coupled with the legal conclusion that the status of business invitee may extend to the business' approaches, *Wofford, supra*, it cannot be said there is no issue as to whether Vann was a business invitee.

The second question is Town Topic's duty to Vann as a business invitee. As a general rule, a party has no duty to protect another from a deliberate criminal attack by a third person, however, exceptions are recognized. *Faheen By Hebron v. City Parking Corp.*, 734 S.W.2d 270, 272 (Mo. App.1987); *Meadows v. Friedman R.R. Salvage Warehouse*, 655 S.W.2d 718, 721 (Mo.App.1983); *See*, Note, Business Owners Duty to Protect Invitees From Third Party Criminal Attacks—Or—"Business Owners Beware: Missouri Ups the Ante," 54 Mo.L.Rev. 443 (1989). The applicable exception here is "special facts." "Special facts" appear in this case because of Vann being an invitee and the question of whether or not the business owner took all necessary steps to protect him as such. Special facts include those situations where a known dangerous or violent individual is present or *where an individual present on the premises has conducted himself so as to indicate danger and sufficient time exists to prevent injury*, (emphasis added), *Warren v. Lombardo's Enterprises, Inc.*, 706 S.W.2d 286, 287 (Mo.App.1986).

> ... proprietors of a place of public amusement may not, without liability, permit activities of third persons, which are dangerous to patrons, to continue, after they know or by the exercise of reasonable care could have known of them, when by the exercise of reasonable care they could have been able to protect patrons therefrom by controlling or preventing such activities. *Hughes v. St. Louis Nat. League Baseball Club*, 359 Mo. 993, 224 S.W.2d 989, 994 (1949).

A jury issue was created as to whether an individual was on the premises creating a danger and if Town Topic within the time and circumstances acted sufficiently on its duty to protect Vann. *Warren v. Lombardo's, supra*. No doubt that a duty issue is raised by this testimony, an issue which was not properly disposed by summary judgment.

Finally, on the basis of the facts as brought out in affidavits and depositions, it cannot be determined as a matter of law Vann's entry into the fray as a volunteer or an intermeddler automatically keeps him from any recovery. I am not even sure as a matter of law it can be determined hollering "break it up" was sufficient intervention into the melee to be an intervening cause to deny tort relief. It is unclear whether he was still on the premises when he hollered or was chased, but he was on the defendant's land when stabbed. In *Chomatopoulos v. Roma DeNotte Social Club*, 212 N.J.Super. 447, 515 A.2d 296, 298–99 (1985), a "peacemaker" was stabbed outside an illegal gambling operation. The court ruled the plaintiff was an invitee, and, quoting from the Restatement (Second) of Torts § 889, held the doing of an illegal act (gambling) did not prevent the maintaining of an action for harm caused by the abnormally dangerous action of a third person. *Id.* The doctrine of comparative fault has modified the common law relationship between "business invitors and their invitees," by allowing a jury to assess the relative fault as between the parties. *Cox v. J.C. Penney Co., Inc.*, 741 S.W.2d 28, 30 (Mo. banc 1987); *Hefele v. National Super Markets, Inc.*, 748 S.W.2d 800, 802 (Mo.App.1988). By such apportionment a jury found an injured invitee 49% at fault in an attack on her by another patron. *Gould v. Taco Bell*, 239 Kan. 564, 722 P.2d 511 (1986). The court upheld an award against Taco Bell based on 51% of the fault for failure to protect the invitee and failure to prevent the conduct of the attacker. *Id.* 722 P.2d at 514.

It may very well be Town Topic did everything it could to protect Vann, or that he was 100% at fault for getting involved, but these are matters for the jury. Therefore, the granting of summary judgment

based on the facts present was inappropriate and done in error.