Mary Patricia COHEN and Laura Ann Cohen, Plaintiffs/Appellants,

v.

WEST COUNTY MOTOR COMPANY, William N. Suntrup, and Mary Julie Suntrup, Defendants/Respondents.

No. 64683.

Missouri Court of Appeals, Eastern District, Division Four.

May 17, 1994.

Rehearing Denied June 15, 1994.

R.J. Slater, James P. Leonard, Padberg, McSweeney, Slater & Merz, St. Louis, for plaintiffs, appellants.

Laurie S. Wright, Robyn G. Fox, Jeanette S. Graviss, Moser and Marsalek, P.C., St. Louis, for defendants, respondents.

GRIMM, Presiding Judge.

This is a wrongful-death case. Defendant West County Motor Company operates a business on both sides of a public street. An automobile struck decedent as he crossed the street, going from one part of the business to another. Plaintiffs sued, claiming defendant failed "to warn of the danger or to modify the area," or to remedy the condition. The trial court sustained defendant's summary judgment motion.

Plaintiffs raise one point on appeal. They allege that summary judgment was improper because defendant owed decedent "a duty to maintain both its premises and the approaches thereto in a reasonably safe condition." We affirm.

## I. Background

We review the record in the light most favorable to plaintiffs, according them the benefit of all reasonable inferences. It discloses the following.

Defendant's business is located in the City of Manchester. This dealership operates buildings on both sides of Park Lane, a public road. Its method of facilitating sales and servicing requires customers to cross Park Lane.

City made improvements on Park Lane, including the section dividing the dealership. These improvements were completed prior to the incident, and included installation of a "barrier type curb" and a "wedge" at or near the dealership. All improvements were located entirely within City's public street easement.

On June 12, 1987, decedent, a customer of defendant, exited the dealership to pick up his car after it was repaired. His car was located across Park Lane.

A witness said that decedent trotted or jogged toward the street and when he got to the street, "it seemed that he was stepping up ... or trying to step over the curb on Park Lane." According to the police report, the witness said that it appeared as if decedent "had stumbled or tripped on the curb on the north edge of Park Lane." Decedent fell forward in front of the automobile and was struck by it.

## II. Duty to Maintain Premises

■ Plaintiffs' sole point on appeal alleges that the trial court erred in granting summary judgment because "defendants owed [decedent] a duty to maintain both its premises and the approaches thereto in a reasonably safe condition." Specifically, they contend that: "(a) [decedent] was a business invitee, and (b) defendants maintained business facilities on both sides of a public roadway, thereby requiring [decedent] to cross said roadway in the exercise of the invitation extended by defendants." Although it appears that this point does not comply with Rule 84.04(d), we review *ex gratia*.

■ In Missouri, the general rule is that the duty to maintain public sidewalks and highways lies with the municipality. *O'Neil v. ADM Growmark River Systems, Inc.*, 871 S.W.2d 54, 56 (Mo.App.E.D.1994). Two exceptions exist. The first is the "special use exception," which applies in two situations:

[1] when an abutting property owner has made use of the public sidewalk [or roadway] for some other purpose than merely using them as a public sidewalk [or roadway], such as a driveway, or [2] where the abutting owner puts an obstruction on the public sidewalk [or roadway] which was not a part of the public sidewalk [or roadway] as originally constructed in order to serve his own purposes.

*Id.*

Here, as in *O'Neil*, this exception is inapplicable. There, the plaintiffs appealed an order of summary judgment dismissing their wrongful death action. The plaintiffs brought the action after a train struck the decedent at a public railroad crossing, killing him.

The defendant operated a grain elevator with only one means of ingress and egress to its property. To reach the property, drivers had to cross a rail crossing consisting of three sets of tracks. During the defendant's peak season, traffic back-ups occurred on the access roads. The day the decedent was killed, traffic was congested on both sides of the rail crossing.

In their petition, the plaintiffs alleged that the defendant had a duty to warn the decedent of the dangers at the rail crossing and to take precautions to protect him. Specifically, among other things, they argued that this duty was owed because the defendant made a special use of the rail crossing.

In rejecting their claim, this court stated: The public street and rail crossing were used only for their intended purposes. The fact that traffic backed-up down the street and through the rail crossing does not change the use from a thoroughfare into a parking lot as plaintiffs contend. Defendant did not obstruct nor alter in any manner the street and rail crossing. It was used throughout as a road.

*Id.* (citation omitted).

Here, similarly, the record contains no evidence that defendant used Park Lane for any reasons other than for its intended purposes. The fact that its customers were required to cross the street to conduct business does not bring it within the special use exception. *See also Lange v. Wehrenberg Theaters, Inc.*, 870 S.W.2d 880, 883 (Mo.App.E.D.1993) (The plaintiff was injured while using a sidewalk adjacent to a theater. He claimed abutting owner and lessee had a duty to maintain the sidewalk. In rejecting application of the spe-

cial use exception, this court stated, "It does not apply to using the sidewalk as is, as an ingress or egress to an owner's property."). Here, there is no evidence that defendants used Park Lane for any purpose other than ingress and egress.

■ We turn to the second exception to the general rule. This exception "imposes a duty on an abutting property owner when he artificially creates, through negligence or affirmative action, a condition which makes passage unsafe." *O'Neil,* 871 S.W.2d at 56. The dangerous condition must arise through the owner's "affirmative actions and not his omissions." *Lange,* 870 S.W.2d at 883.

Here, this exception is also inapplicable. The record reveals that defendants did not artificially create any dangerous condition. On the contrary, the undisputed evidence shows that the curbing and asphalt wedge were constructed solely by City and its contractors.

Nevertheless, in their brief, plaintiffs contend, "In Missouri, a business is liable for injuries to business invitees caused by an unsafe condition on its premises or the approaches thereto." In support, they rely on *Happy v. Walz,* 213 S.W.2d 410 (Mo.Div. 1 1948) and *Associated Dry Goods Corp. v. Drake,* 394 F.2d 637 (8th Cir.1968). Although some general language in those opinions may appear to support plaintiffs' position, neither the facts nor the holdings are applicable here.

In *Happy,* plaintiff parked his car in an alley. He intended to enter the back door of defendant's hardware store. Instead, he stepped into a freight elevator shaft in defendant's hardware store. The *Happy* court found the evidence was sufficient to find negligence "in the maintenance of the unlocked, unguarded elevatorshaft doors, in their shown setting, without any warning of the danger." *Happy,* 213 S.W.2d at 416.

In *Drake,* plaintiff fell on defendant's steps as she was going to the basement of defendant's store. The *Drake* court noted the evidence supported a finding that: (1) the steps were open to the weather and wet; (2) the leading edges of four steps were worn, beveled and rounded, slick and smooth; and (3) these steps, when worn, rounded, or wet, become more slippery. *Drake,* 394 F.2d at 640. Such evidence was sufficient to make a submissible case to the jury. *Id.* at 643.

In *Happy* and *Drake,* the plaintiff's injury occurred on the defendant's property and was caused by defendant's failure to correct a condition on its property. Here, decedent's injury occurred on public property, Park Lane, and was apparently caused by decedent stumbling or tripping over City's curb.

Next, plaintiffs contend that this court has recognized "the duty owed by a business proprietor to his customers can extend beyond the strict boundaries of the premises to include the approaches to the business." For this contention, they cite *Wofford v. Kennedy's 2nd Street Co.,* 649 S.W.2d 912 (Mo.App. E.D.1983). However, in *Wofford,* this court affirmed the trial court's dismissal of plaintiff's petition.

There, the plaintiff, a customer of the defendant, was attacked as she approached her car parked on a public street. Among other things, she alleged the defendant was negligent for failing to warn her of the dangers of an attack. *Id.* at 913. This court held that the "failure to warn [the plaintiff] was not unreasonable in view of [the defendant's] lack of control over the public streets." *Id.* at 915.

So it is here. Defendant has no control over the city's curb or wedge, nor the traffic on Park Lane. As such, it had no duty to warn of possible dangers.

Finally, plaintiffs argue that an abutting property owner who makes special use of public property is under a duty to exercise reasonable care to maintain it; they cite *Martin v. Gilmore,* 358 S.W.2d 462 (Mo.App. W.D.1962) and *O'Connell v. Roper Electric Co., Inc.,* 498 S.W.2d 847 (Mo.App.S.D.1973). Again, the facts in these cases make them inapplicable here.

In *Martin,* plaintiff fell on a portion of a sidewalk which sloped where crossed by the defendant's driveway. The defendant had maintained the driveway and the sidewalk for approximately 30 years. *Martin,* 358 S.W.2d at 464. The *Martin* court applied the general rule that when a sidewalk is used as a

driveway, the abutting owner has a duty not to permit the use to create unsafe conditions for pedestrians.

*O'Connell* is a similar case, involving a driveway on the defendant's property which the defendant paid for and maintained. Here, as previously noted, the curb and wedge were built and maintained by City, not defendant.

■ The trial court's judgment is affirmed.*

CARL R. GAERTNER and AHRENS, JJ., concur.

---

* In their brief, defendants allege that we do not have jurisdiction of this appeal because plaintiffs filed an untimely notice of appeal. The summary judgment order was granted on November 24, 1992. Pursuant to Rule 74.01(b), it did not become final until all other claims were adjudicated. On August 30, 1993, the trial court entered a judgment approving a settlement between plaintiffs and remaining defendants. The notice of appeal, filed September 15, 1993, was timely. This allegation is without merit and is denied.